IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


FRANK MARTINEZ,

                    Plaintiff,

          v.                              CASE NO. 05-3192-SAC

UNITED STATES
OF AMERICA, et al.,

                    Defendants.

### MEMORANDUM AND ORDER

     In this action, plaintiff seeks money damages based on
allegations that he was denied a wheel chair and necessary
medical treatment while a federal detainee; that, as a result, he
developed an diabetic ulcer on his right foot which became
infected; and ultimately his right leg had to be amputated below
the knee.


### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

     The following facts appear from the record before the court
including the complaint and exhibits filed by plaintiff[1]:

     1.  On July 8, 2001, Mr. Martinez was a federal detainee at
the Federal Medical Center, Rochester, Minnesota (FMC).  While
there, he was diagnosed with "circulatory problems on his feet
due to his diabetes" and was properly treated.  Complaint (Doc.
1) at 2.  Medical personnel at the FMC instructed that he avoid
walking and assigned him permanently to use of a wheelchair.

---

[1]

     A few facts regarding the transport of plaintiff have been gleaned from the file in an earlier action
brought by plaintiff raising the same claims, which is judicially noticed herein.

2.  Plaintiff left the FMC on October 5, 2001, in the custody of the United States Marshals Service (USMS), and was transported to the holding center for federal prisoners in Oklahoma City.  On or about October 10, 2001, plaintiff departed Oklahoma City and was transported by the USMS to the Corrections Corporation of America facility in Leavenworth, Kansas (CCA), where he arrived October 12, 2001.  Plaintiff claims the U.S. Marshals transporting him at these times denied him the use of a wheel chair and forced him to walk.

3.  Plaintiff was detained at the CCA from October 12, 2001, to November 9, 2001.  Upon his arrival, he sought medical attention, was examined, and he informed medical personnel of his medical problems and treatment prescribed by the FMC.  His request for a wheel chair was denied by Supervising Nurse Heintzlman.  He alleges Nurse Henitzlman also assigned him to a cell "that was at least one-half mile away from the CCA's infirmary" where plaintiff had to walk twice a day to receive insulin shots for his diabetes.

4.  During his pre-trial detention of less than a month at the CCA, a bone in plaintiff's right ankle "began protruding." Plaintiff immediately sought medical attention.  Doctor Scott Bowlin examined plaintiff and stated the protruding bone would return to normal on its own and prescribed no treatment or medication.  During the next two days, an ulcer developed on plaintiff's ankle.  In another two days, plaintiff was able to see Dr. Bowlin, who cut the ulcer from his ankle, and discharged him without medication.  The following day, plaintiff's ankle and

foot were very painful and the skin was discolored.  He sought
medical attention, but no doctor was available.  Plaintiff
alleges he was eventually taken to Cushing Memorial Hospital in
Leavenworth, Kansas, and examined by two doctors who determined
his wound needed to be cleaned, and scheduled the procedure for
the next day.  However, the next morning before the procedure
could be performed, he was picked up by U.S. Marshals and taken
before a federal judge for a hearing described below.

5.  On November 5, 2001, plaintiff had written to Judge
Larsen, the federal judge before whom his criminal prosecution
was pending, describing his medical condition and asking for
emergency assistance.  Judge Larsen directed that plaintiff's
letter be filed in the criminal case and ordered plaintiff's
appearance in his court on November 9, 2001.  At the hearing,
Judge Larsen stated he had obtained a report from the CCA, and
they "had conceded" they were "not equipped to deal with the
problem with (plaintiff's) foot, that if the foot went untreated,
that he might lose the foot."  Judge Larsen gave plaintiff the
choice of transfer to a medical facility within the federal
prison system for treatment of his foot, or  release on bond to
seek medical treatment on his own.  The judge ordered plaintiff
conditionally released on bond and to immediately obtain the
necessary medical treatment for his right foot.

6.  Plaintiff was driven from the court to a hospital in
Kansas City, and exhibited medical records indicate he was
admitted on November 9, 2001.  Doctors there diagnosed him with
"septic right foot with questionable myelitis," longstanding

diabetes mellitus complicated by neuropathy, vascular disease, and coronary artery disease, among other inflictions including history of long term drug addiction. The doctors recorded that plaintiff presented with three weeks history of pain in his right foot, a "festering extensive lesion" on his right foot with evidence of infection, and had been advised to get proper treatment of his foot lesion to avoid amputation. Plaintiff alleges in the complaint that a doctor at the hospital told him "his leg needed to be amputated just below the knee" due to the severe infection, but they would try to save it. His wound was treated, and he was discharged on November 20, 2001. The discharge summary provided: "He will be closely followed up to ensure that there is proper wound healing and every effort is made to salvage his leg."

7. On December 26, 2001, "after a six week course of antibiotics," plaintiff returned to the hospital with "an open wound" on his right foot including a segment of exposed bone, "which has been cared for at home." He was treated, medicated and told to return in one week.

8. On January 16, 2002, medical records exhibited by plaintiff show he returned to the hospital, and the examining physician recorded the history of the "diabetic foot ulcer" and its treatment. He noted plaintiff had been followed and treated at the hospital's "wound clinic" and his foot had shown slow improvement. However, upon this admission he had increasing swelling and necrosis of the wound. He was treated further.

9. Plaintiff returned to the hospital, and on January 23,

2002, he underwent a right below-knee amputation. Records exhibited by plaintiff indicate a second-stage of the operation was performed on January 29, 2002.

10.   On January 20, 2004, counsel representing plaintiff delivered his administrative claim for damages under the FTCA to the Bureau of Prisons. The "Basis of Claim" was stated as follows:

> On or about November of 2001, the claimant was an inmate at a prison facility located in Leavenworth, Kansas, and operated under the supervision and control of the Bureau of Prisons. While under the care, custody and control of the Bureau of Prisons, and also the Corrections Corporation of America, the claimant developed a serious lower extremity condition which required prompt medical care and attention. Claimant was denied and deprived of appropriate medical care, and such denial of medical care and related services ultimately resulted in the amputation of the claimant's right foot on or about January 29, 2002.

Plaintiff claimed damages in the amount of $1,000,000.00.

11.   On the same date, January 20, 2004, plaintiff, with assistance of counsel, filed a lawsuit in federal district court in Kansas City, Kansas, naming the Federal Bureau of Prisons, the CCA and others, and seeking money damages based upon the alleged denial of medical treatment for his foot. Martinez v. Lappin, et al., Case No. 04-3023 (D.Kan. Nov. 1, 2004, unpublished). Defendants' motions to dismiss were sustained in that case, and the federal tort claims were all dismissed for lack of jurisdiction because plaintiff had not completed the administrative claim process.

12.   In August, 2005, plaintiff received a response to his administrative claim from the USMS. The agency stated:

> Our review of the circumstances surrounding your claim

> disclosed no evidence of negligence or wrongful acts on
> the part of any USMS employee.  Specifically, you have
> provided no evidence to substantiate that the USMS was
> ever aware of your medical needs or that you were
> denied treatment at any time.  Further, the CCA
> Leavenworth is an independent contractor of the USMS.
> The United States is not liable under the Federal Tort
> Claims Act for acts of independent contractors, as per
> 28 U.S.C. 2671 (cite omitted).  Thus, the USMS is not
> responsible for any negligence committed by the ACDCFA.
> Accordingly, your claim against the United States . .
> . is denied.

The response further provided: "If you are dissatisfied with our determination you may file suit in the appropriate United States District Court not later than six months after the mailing of this notice of final decision[2]."

13.   On April 25, 2005, plaintiff filed the instant "new" complaint, pro se, naming the United States, unknown U.S. Marshals, Doctor Scott Bowlin, and Nurse Heintzlman as defendants.  By prior order dated January 12, 2006, this court liberally construed the complaint as seeking money damages from the individual defendants pursuant to <u>Bivens</u> and dismissed the claims against the individual defendants as time-barred.  The court also construed the complaint as seeking money damages from the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80 (FTCA), and substituted the United States as sole defendant.  Summons issued to defendant United States.

This matter is presently before the court upon defendant United States' Motion to Dismiss pursuant to FRCP Rule 12(b)(1).

---

[2]    28 C.F.R. 14.9(a) provides:
Final denial of an administrative claim shall be in writing and sent to the claimant, his attorney, or legal representative by certified or registered mail. The notification of final denial may include a statement of the reasons for the denial and shall include a statement that, if the claimant is dissatisfied with the agency action, he may file suit in an appropriate U.S. District Court not later than 6 months after the date of mailing of the notification.

Plaintiff has not responded to this motion, and has not apprised the court of his current address.

**LEGAL STANDARDS**

Section 1346(b) of 28 U.S.C., provides federal district courts with subject matter jurisdiction over FTCA claims. It generally authorizes suits against the United States for damages:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Plaintiff's action for negligent denial of medical treatment while in federal detention sounds in tort and is properly brought under the FTCA.

A Rule 12(b)(1) motion challenges the federal court's subject matter jurisdiction. A case must be dismissed when the court lacks statutory power to adjudicate the case. Statutes conferring jurisdiction on federal courts must be strictly construed and doubts are to be resolved against federal jurisdiction. U.S. ex rel. King v. Hillcrest Health Center, Inc., 264 F.3d 1271, 1280 (10th Cir. 2001), cert. denied, 535 U.S. 905 (2002). Plaintiff, the party invoking federal jurisdiction, bears the burden of proof. Penteco Corp. v. Union Gas System, Inc., 929 F.2d 1519, 1521 (10th Cir. 1991). It follows that the basis for subject matter jurisdiction must

appear on the face of plaintiff's well-pled complaint.[3]   FRCP 8(a)(1); Martinez v. U.S. Olympic Committee, 802 F.2d 1275, 1280 (10th Cir. 1986); Penteco, 929 F.2d at 1521.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms: a facial attack which presumes the allegations in the complaint as true, or a factual attack which goes beyond the allegations contained in the complaint and challenges the facts upon which subject matter jurisdiction depends.  Holt v. U.S., 46 F.3d 1000, 1002-1003 (10th Cir. 1995).  In this case, the United States has not submitted any extra-complaint evidentiary material in connection with the timeliness issue.  Rather, defendant argues that, even accepting plaintiff's allegations as true, his FTCA claims are time-barred.

As a general rule, a 12(b)(1) motion is not to be converted into a motion for summary judgment under Rule 56.  Daugherty v. U.S., 212 F.Supp.2d 1279, 1303 (N.D.OK. 2002), aff'd 73 Fed.Appx. 326 (10th Cir. 2003).  A court has wide discretion to allow affidavits, documents and other evidence extraneous to the complaint to resolve disputed jurisdictional facts under Rule 12(b)(1), and "may hear evidence and make findings of fact necessary to rule on the subject matter jurisdiction question before trial."  E.F.W. v. St. Stephen's Indian High School, 264 F.3d 1297 (10th Cir. 2001).

---

[3]   Plaintiff has attempted to allege facts sufficient to establish this Court's subject matter jurisdiction over his tort claim.  When, as here, a party's Rule 12(b)(1) motion challenges the facts upon which subject matter jurisdiction depends, a district court may not simply presume the truthfulness of the complaint's factual allegations.

The Tenth Circuit Court of Appeals has recognized an exception to the general rule, which requires conversion of a Rule 12(b)(1) motion to a Rule 56 or a Rule 12(b)(6) motion where "the jurisdictional question is intertwined with the merits of the case." Wheeler v. Hurdman, 825 F.2d 257, 259(10th Cir.), cert. denied, 484 U.S. 986 (1987); see also Pringle v. United States, 208 F.3d 1220, 1223 (10th Cir. 2000); United States ex rel. Ramseyer v. Century Healthcare Corp., 90 F.3d 1514, 1518 (10th Cir. 1996); Holt, 46 F.3d at 1003. The Tenth Circuit has stated that subject matter jurisdiction and the merits are considered to be intertwined "[w]hen subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case." Wheeler, 825 F.2d at 259. Intertwining also exists when the jurisdictional question in fact requires resolution of an aspect of the substantive claim. See also Pringle, 208 F.3d at 1223.

The statute providing the substantive claim in this case (the FTCA) is incorporated by reference into the jurisdictional statute (Section 1346). Subject matter jurisdiction is, therefore, dependent upon the same statute. However, the underlying issue of resolution of the jurisdictional question in this case does not require resolution of an aspect of the substantive claim. Pringle, 208 F.3d at 1223. The jurisdictional issue herein is the statute of limitations question of whether or not the plaintiff timely presented his administrative claim under the FTCA. The reasoning in Gonzales v. U.S., 284 F.3d 281, 287 (1st Cir. 2002) is convincing under the

facts of this case:

> While the FTCA . . . provides the basis for the cause
> of action here [and sets forth the statute of
> limitations], it is clear that the facts relevant to
> the determination of subject matter jurisdiction do not
> go directly to the merits of the plaintiff's claim.
> That is, the determination of whether the claim is
> time-barred bears no relationship to whether the
> plaintiff can make out a showing of negligence on the
> merits of the case.

Given that the jurisdictional question in this case is not
intertwined with the merits, defendant's motion to dismiss for
lack of subject matter jurisdiction on statute of limitations
grounds need not be converted into a motion for summary judgment.
See id., (The FTCA statute of limitations set forth in 28 U.S.C.
§ 2401(b) does not create a jurisdictional question intertwined
with the merits of the case); cf. Pringle, 208 F.3d at 1223.

The doctrine of sovereign immunity precludes suit against the
United States without the consent of Congress.  Thus, the "terms
of its consent define the extent of the court's jurisdiction."
Franklin Savings Corp., In re, 385 F.3d 1279, 1287 (10th Cir.
2004), cert. denied, ___U.S.___, 126 S.Ct. 337 (2005).  Because
the FTCA constitutes a waiver of the government's sovereign
immunity, the conditions established by the Act must be strictly
construed.  See Pipkin v. United States Postal Serv., 951 F.2d
272, 275 (10th Cir. 1991); Bradley v. United States, 951 F.2d
268, 270 (10th Cir. 1991).  The requirements are jurisdictional
and cannot be waived."  See id.; Estate of Trentadue ex rel.
Aguilar v. U.S., 397 F.3d 840, 852 (10th Cir. 2005); Industrial
Constructors Corp. v. U.S. Bureau of Reclamation, 15 F.3d 963,
967 (10th Cir. 1994)(Proper presentation of the administrative

claim is a jurisdictional prerequisite to suit, one which the courts have no authority to waive.); <u>Hart v. Dept. of Labor ex rel U.S.</u>, 116 F.3d 1338, 1339-40 (10th Cir. 1997); <u>Franklin</u>, 385 F.3d at 1287, 1289 *citing* <u>Sisseton-Wahpeton Sioux Tribe v. U.S.</u>, 895 F.2d 588, 592 (9th Cir.), <u>cert</u>. <u>denied</u>, 498 U.S. 824 (1990)(plaintiff's failure to sue within the period of limitations is not simply a waivable defense; it deprives the court of jurisdiction to entertain the action.).

Timeliness of suit is one of the conditions in the FTCA of the government's waiver of sovereign immunity. <u>Dahl v. United States</u>, 319 F.3d 1226, 1228 (10th Cir. 2003) [Federal jurisdiction under the FTCA is limited by a number of conditions, including the statute of limitations in § 2401(b)]. Defendant United States asserts that plaintiff's administrative claim did not satisfy the FTCA's time requirements. Under the FTCA, any tort claim against the United States is barred unless it is presented[4] to the appropriate federal agency within two years of the claim's accrual[5]. <u>Franklin</u>, 385 F.3d at 1279. Thus, this district court is without subject matter jurisdiction to try this FTCA action if plaintiff failed to satisfy the timing requirements set forth in Section 2401(b). <u>Franklin</u>, at 1287, *citing* <u>Dahl</u>, 319 F.3d at

---

[4]

A claim is deemed presented when a federal agency receives from a claimant "an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." 28 C.F.R. 14.2(a).

[5]

28 U.S.C. 2401(b) provides: "[A] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing . . . of notice of final action of the claim by the [appropriate Federal] agency to which it was presented."

1228 (court must dismiss for lack of subject matter jurisdiction if an FTCA litigant does not satisfy the § 2401(b) timing requirement); <u>Duplan v. Harper</u>, 188 F.3d 1195, 1199 (10th Cir. 1999)(Failure to comply with the procedural requirements of the FTCA deprives a federal court of subject matter jurisdiction.).

Federal law governs the point at which a claim "accrues" under the FTCA and Section 2401(b). <u>Hoery v. United States</u>, 324 F.3d 1220, 1222 (10th Cir. 2003). Neither the FTCA nor its legislative history, however, speaks to when a "claim accrues." In construing the statute of limitations, this court must seek to neither extend nor narrow the United States' waiver of sovereign immunity beyond what Congress intended. <u>United States v. Kubrick</u>, 444 U.S. 111, 117-18 (1979).

As a general rule, a cause of action involving medical malpractice "accrues" under the FTCA when the plaintiff "has discovered both his injury and its cause." <u>Kubrick</u>, 444 U.S. at 120. "Accrual does not await the plaintiff's discovery that his injury resulted from malpractice or negligence." <u>Gualtier v. U.S.</u>, 837 F.Supp. 360 (D.Kan. 1993), <u>aff'd</u>, 25 F.3d 1057 (10th Cir. 1994); <u>Kubrick</u>, 444 U.S. at 123 (The limitations period of § 2401(b) begins to run when plaintiff learns of the operative facts surrounding his injury and its cause, not when he becomes aware that the harm was negligently inflicted.). For FTCA purposes, a claimant is aware of the injury once apprised of its general nature. "Lack of knowledge of the injury's permanence, extent, and ramifications does not toll the statute." <u>Cannon v. U.S.</u>, 338 F.3d 1183, 1190 (10th Cir. 2003), <em>citing</em> <u>Gustavson v.</u>

United States, 655 F.2d 1034, 1036 (10th Cir. 1981); see also Robbins v. United States, 624 F.2d 971, 973 (10th Cir. 1980)(uncertainty as to the "ultimate damage" does not toll § 2401(b)).

## DISCUSSION

Applying the foregoing legal standards to the facts as alleged by plaintiff, it is evident plaintiff's administrative claim was not presented to the agency within the time limits set forth in Section 2401(b).  Mr. Martinez had two years to present his claim after it accrued.  His claim accrued at the time he became aware of his diabetic ulcer and its serious condition as well as the alleged cause, ie., denial of a wheel chair and medical care by the USMS and personnel at the CCA[6].  Plaintiff's apparent assumption that his claim did not accrue until his leg was amputated in January, 2002, is not legally sound.

The record plainly shows plaintiff became aware of his injury in October or November, 2001, the two months when he sought medical attention for his foot.  In early November, 2001, he alleges he wrote Judge Larsen complaining that the actions or inactions of the USMS and the CCA personnel had caused the ulcer on his foot and resulted in his serious medical condition.  Martinez' pleadings and exhibits contain statements describing his injury, his knowledge of the existence and extent of the injury, and the alleged cause of it.  Plaintiff's claim accrued

---

[6]

Defendant notes, and this court does not deny or decide, that the CCA is an independent contractor, and the United States is not liable for their tortious acts under the FTCA.

certainly no later than November 9, 2001, when Judge Larsen stated, with plaintiff present in court, that plaintiff was not receiving adequate care at the CCA and his leg might have to be amputated.  Moreover, Mr. Martinez has provided medical records describing his physical injury, prognoses, and treatments he received in a non-prison hospital in November, 2001.  The conclusion is inescapable that Mr. Martinez knew no later than November 9, 2001, and probably before, of both the injury and its alleged causes.  The court therefore finds that Mr. Martinez' tort claim "accrued" on or before November 9, 2001.

The record also clearly documents, and it is not disputed, that Mr. Martinez's administrative claim for damages under the FTCA was presented and received by the agency on January 20, 2004.  Since plaintiff's claim accrued no later than November, 2001, and plaintiff presented his administrative claim after November, 2003, it is obvious that his claim was not presented within the two-year statute of limitations.

Accordingly, Mr. Martinez" tort claim is barred by the statute of limitations, unless some theory of equitable tolling applies.  The court has been not been made aware of any impediment preventing plaintiff from availing himself of medical and legal advice within the statute of limitations period or of facts that suggest he is entitled to equitable tolling.

Plaintiff is hereby required to show cause within twenty (20) days why defendant's Motion to Dismiss should not be sustained and this action dismissed for lack of subject matter jurisdiction for the reasons stated in defendant's Motion to Dismiss (Docs. 15

14

& 16) and this Memorandum and Order.  If plaintiff fails to file a timely response, the motion will be sustained and this action will be dismissed with prejudice for lack of subject matter jurisdiction.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff is granted twenty (20) days to show cause why this action should not be dismissed as time-barred for the reasons stated in defendant's Motion to Dismiss and in this Memorandum and Order.

The Clerk is directed to change plaintiff's address to the address on defendant's Amended Certificate of Service (Doc. 17) and to transmit a copy of defendant's Motion to Dismiss (Doc. 15) and Memorandum in Support of Motion (Doc. 16) to plaintiff with a copy of this Order.

**IT IS SO ORDERED.**

Dated this 23rd day of May, 2006, at Topeka, Kansas.


s/Sam A. Crow
U. S. Senior District Judge